[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
{¶ 2} After a jury trial, the defendant-appellant Scottie[1]
Jackson was convicted of one count of rape in violation of R.C.2907.02(A)(2), a first-degree felony. On appeal, Jackson raises one assignment of error. He contends that his conviction was against the manifest weight of the evidence and that there was insufficient evidence to sustain the conviction.
{¶ 3} "A reviewing court considering a manifest-weight claim `reviews the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses.'"[2] The question for the reviewing court is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."[3]
{¶ 4} For a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt.[4] The conviction should not be disturbed unless the reviewing court determines that reasonable minds could not reach the conclusion reached by the trier of fact.[5]
{¶ 5} R.C. 2907.02(A)(2), governing rape, provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
{¶ 6} In this case, the victim testified that while she was doing laundry late at night, Jackson entered her apartment building's laundry facility. After making some comments to her, he stood between her and the door, and then shut it. He grabbed the victim from behind, asking her for a hug and making other personal comments. The victim testified that the facility was a small one, being crowded with two or more persons in it at the same time. She was able to break free once, but she was grabbed again from behind. Jackson placed his right hand inside the bottom clothing she was wearing. He put his fingers inside her vagina. Finally, she got away and ran up some stairs to her apartment.
{¶ 7} The victim described what had happened to her to persons she lived with, some of whom then went with her when she placed a telephone call to the police from a nearby convenience store. The victim recognized Jackson and his girlfriend from seeing them around the apartment complex. When the police arrived, the victim was eventually brought to the apartment of Jackson's girlfriend in the same complex, where she was able to identify Jackson.
{¶ 8} Jackson was then taken for an interview at the criminal investigations personal crimes unit, as was the victim. At this time, Jackson permitted his fingers to be swabbed for the purpose of preparing a DNA profile. The victim and Jackson's girlfriend also provided samples for DNA profiling as well. A serologist with the Hamilton County Coroner's Office testified that DNA from three different persons was found in the material taken from Jackson's right hand, and that neither the victim, Jackson, or Jackson's girlfriend could be excluded, and that in all likelihood it was their DNA. In the sample taken from Jackson's left hand, only Jackson's DNA profile was present.
{¶ 9} It was only after a third person's DNA profile was discovered in the sample taken from Jackson's right hand that Jackson's girlfriend was asked to donate a sample for DNA profiling. Jackson's girlfriend testified at trial that he had visited her that evening. She testified that Jackson had accompanied her once to the laundry room on the night that the crime had occurred. She also testified that they had watched a pornographic movie together, but also admitted that there was a period of time when he was not with her that evening.
{¶ 10} It was within the discretion of the trier of fact to believe the prosecution's witnesses and to reject the evidence advanced by Jackson.[6] After reviewing the record, we cannot say that this is the exceptional case in which the evidence weighs heavily against the conviction, and it is therefore not a candidate for reversal on weight-of-the-evidence grounds.[7] Moreover, after viewing the evidence in the light most favorable to the state, we hold that a rational trier of fact could have found that the state had proved the elements of rape beyond a reasonable doubt. Accordingly, the single assignment of error is overruled.
{¶ 11} Therefore, we affirm the judgment of the trial court.
{¶ 12} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Gorman and Winkler, JJ.
[1] The defendant-appellant's name appears interchangeably throughout the record as either Scottie or Scotty Jackson.
[2] State v. Group, 98 Ohio St.3d 248, 259, 2002-Ohio-7247,781 N.E.2d 980, at ¶ 77, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[3] See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, at ¶ 77.
[4] See Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,2789; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[5] See id. at 273, 574 N.E.2d 492.
[6] See State v. Dehass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[7] See Group, supra, at 260, 781 N.E.2d 980, at ¶ 86.